GERTRUDE BART *et al.*, Plaintiff-Appellee and Cross-Appellant, v. UNION OIL COMPANY OF CALIFORNIA, Defendant-Appellant and Cross-Appellee.

Third District   No. 3—87—0814

Opinion filed February 3, 1989.—Rehearing denied July 20, 1989.

Robert H. Joyce, Gus A. Paloian, Brent I. Clark, and Sarah A. Biety, all of Seyfarth, Shaw, Fairweather & Geraldson, of Chicago (Mark A. Lies II, of counsel), for appellant.

Patrick J. Crimmins, of Clancy & McGuirk, P.C., of St. Charles (Wendell W. Clancy and John Hoscheit, of counsel), for appellee.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant, Union Oil Company of California, operated an oil refinery in Lemont, Illinois. On July 23, 1984, an explosion occurred at the refinery at 5:52 p.m. Subsequently, a second explosion and fire

took place at approximately 6:20 p.m. Alex Bart, a security guard at the refinery, was killed in the explosion; his body was discovered at 9 p.m. In all, the remains of 17 victims were found. The decedent's widow, Gertrude Bart, brought suit in the capacity as special administrator of the estate of her husband to recover damages resulting from the accident.

Mr. Bart was employed as a security guard by the Industrial Patrol Service Corporation. Industrial assigned Bart to perform security services in the premises of the defendant's refinery. On the day of the accident, Bart was assigned to the beach patrol, which required him to patrol the defendant's property outside the boundaries of the refinery. Even in the case of emergency (a "222" alarm) he was to remain outside of the refinery. Bart's patrol was to end at 6 p.m. The last time he was seen alive was at 5:30 p.m. while he was inside the plant. There was no explanation for his presence at that location, although the plaintiff contends Bart was responding to the "222" alarm, which was given shortly after 5:16 p.m.

Mr. Bart was 63 years of age at the time of his death. His wife of 45 years was 66 years at the time. The Barts had five adult sons. Bart was earning $6.10 per hour and was working on a part-time basis when the accident occurred.

Mrs. Bart's suit sought damages for personal injury and wrongful death under both the theories of negligence and *res ipsa loquitur*. The defendant filed a third-party complaint against numerous entities who had designed, built and repaired the vessel responsible for the accident.

On June 4, 1987, a trial commenced. On July 17 the jury reached a verdict in favor of the plaintiff in the total amount of $3 million. Specifically, the verdict reflected $700,000 for conscious pain and suffering; $16,000 for loss of wages; $80,000 for loss of services; $4,000 for funeral expenses and $2,200,000 for loss of love, affection and guidance. On October 29, 1987, the defendant's motion for remittitur was granted in part and the court remitted $1,200,000 of the $2,200,000 amount awarded for loss of love, affection and guidance. The court entered an unconditional judgment for the plaintiff in the amount of $1,800,000.

The defendant brings this appeal raising numerous issues for review pertaining to alleged trial court errors. The plaintiff raises three issues upon cross-appeal. After a thorough review of the trial and court records, this court has determined that this cause must be reversed and remanded for retrial. Due to the quantum of points raised pursuant to that end, we shall address in this disposition only those

matters we considered most meritorious in prompting our determination and which will assist upon retrial.

I

■ Initially, we consider the defendant's contention that Mr. Bart was a "loaned employee" and thus his exclusive remedy lay within the purview of the Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.1 *et seq.*).

The determination of one's employment status is dependent upon a range of specific factors, articulated in the case law of this State. While a cursory appraisal of the facts at bar might conceivably allow a trier to conclude that Bart was a loaned employee, we determine that the trial court's disposition of the motions seeking summary judgment and directed verdict were based upon the correct legal conclusion that Bart was an employee of Industrial Patrol. The trial court's holdings will not be disturbed upon this issue, and the defendant's position that a directed verdict or a judgment notwithstanding the verdict was mandated is incorrect as a matter of law.

We next consider whether the $700,000 verdict figure for conscious pain and suffering can stand in light of the record and proof at trial.

■ No witnesses testified that Mr. Bart was seen subsequent to the initial explosion and prior to discovering his dead body. The testimony presented by the plaintiff on this issue, that of the coroner's pathologist, Dr. Blum, was speculative and, therefore, inconclusive. Dr. Blum testified that based on his knowledge of the relevant facts, Bart may have survived the first explosion and suffered pain prior to his death. However, he also testified that it was equally probable that Bart may not have sustained injury prior to the second explosion. This testimony is not a sufficient basis to support the survival claim verdict.

The evidence presented concerning the time period involved must do more than provide speculation that the decedent was conscious and suffered pain. (*Maras v. Bertholdt* (1984), 126 Ill. App. 3d 876, 476 N.E.2d 599.) Accordingly, the court erred in instructing the jury on this matter; more properly, a directed verdict lay on this claim. In any event, a judgment *non obstante verdicto* should have been entered after the verdict.

■ Further, Dr. Blum's testimony was improperly admitted inasmuch as it was in violation of Supreme Court Rule 220(d) (107 Ill. 2d R. 220(d)). The rule directs that, to the extent that the facts known, or opinions held by an expert, have been developed in discov-

ery proceedings through interrogatories, depositions, or requests to produce, the expert's direct testimony at trial may not be inconsistent with, nor go beyond, the fair scope of the facts known or opinions disclosed in such discovery proceedings. When deposed prior to trial, Dr. Blum stated he could not opine, based upon a reasonable degree of medical certainty, whether Mr. Bart had suffered any conscious pain and suffering. The rules of evidence should be interpreted and applied to secure fairness in administration and to prevent unfair prejudice. The purpose of Rule 220 is to permit litigants to ascertain and rely upon the opinions of experts retained by their adversaries. (107 Ill. 2d R. 220, Committee Comments.) Consequently, paragraph (d) limits the permissible scope of an expert's testimony to those opinions expressed in response to discovery.

■ Next, we find that the trial court's decision to remit the jury award for loss of consortium, as distinct from its procedure, was well founded. The trial court remitted $1,200,000 of the $2,200,000 verdict awarded for loss of love, affection and guidance. However, we believe that the ultimate award of $1 million for loss of consortium appears intolerably high in light of the facts in evidence in the record. After a thorough review of the record, we find that there is no real evidentiary basis for the $1 million remitted verdict figure. We believe that considering the decedent's age and the emancipation of his children extends the subject recovery beyond the flexible limits of fair and reasonable compensation. However, upon retrial, the plaintiff will have the opportunity to remedy such deficiency by supplying a more substantial and relevant evidentiary basis upon which to rest the consortium component of the verdict.

■ Neither the evidence, nor the weight of the evidence, sustains such a figure as the one we review today. When a reviewing court believes that an excessive award is the result of sympathy or prejudice, the errors need be cured by remandment for new trial because findings pertaining to material facts may have been influenced by such improper elements. (See *Barrow v. Lence* (1958), 17 Ill. App. 2d 527, 151 N.E.2d 120.) Thus, this court exercises the broad powers of remandment with which it is endowed to achieve a just and equitable result for the litigants, and orders a new trial in pursuance of the better attainment of justice.

## II

■ While the decisions made above are dispositive of this appeal, there are additional serious issues which deserve detailed comment. Accordingly, we consider the defendant's allegation that the trial

court erred in admitting the photographs of the charred bodies of victims William Drury and Kenneth Armour, as well as enlarged photographs of Mr. Bart's remains. This court finds that the probative value of the photographs of Mr. Drury and Mr. Armour was far outweighed by the prejudicial and inflammatory effect they produced. Furthermore, the testimony received concerning Mr. Drury's injury and subsequent death should not have been admitted. See *Vujovich v. Chicago Transit Authority* (1955), 6 Ill. App. 2d 115, 126 N.E.2d 731.

The photographs of Mr. Bart's badly burned body were not necessary to show material facts or conditions. Collectively, these photos and the testimony related thereto were far more prejudicial than probative in regard to the death of Bart. The subject photographs would not be otherwise admissible, except to prove pain and suffering prior to death, and, as we have noted, there was no evidence found in the record to substantiate the contention of plaintiff that decedent Bart was alive at the time he sustained burns. It is true that where evidence is probative as to the issues, but indirectly prejudicial, the trial court may admit such pictures or exhibits. However, where such evidence is not probative and is prejudicial in character, it is error to admit such exhibits, pictures, etc., as evidence. See *Rusher v. Smith* (1979), 70 Ill. App. 3d 889, 388 N.E.2d 906.

The defendant's next assertion of error relates to the trial court's action in ordering a remittitur without the plaintiff's consent. (See *Foster v. Springfield Clinic* (1980), 88 Ill. App. 3d 459, 410 N.E.2d 604.) When a trial court determines that a damage award exceeds the amount of damages properly proven, it may enter a remittitur. Remittitur is a judicial determination of recoverable damages and is not equated with mutual concessions by, or agreement among, parties litigant. A court does not have authority to enter or order a remittitur unless the prevailing party litigant consents thereto. (*McElroy v. Patton* (1970), 130 Ill. App. 2d 872, 265 N.E.2d 397.) It must be noted that the normal disposition in the case of an error in the practice of remittitur would be to remand the cause to afford the plaintiff an opportunity to accept the remittitur, with the knowledge that a refusal to accept such a remittitur would require a new trial on the issue of damages. Since we have previously determined a new trial is necessary for other reasons, this issue is unlikely to arise again and need not be further considered.

We now turn to the defendant's contention that the plaintiff's *res ipsa loquitur* theory was inapplicable as a basis for recovery. The *res ipsa loquitur* doctrine is a species of circumstantial evidence permitting the trier of fact to draw an inference of negligence if the

plaintiff demonstrates that he or she was injured. It is applicable when the precise cause of injury is not known by the plaintiff. (*Briones v. Mobil Oil Corp.* (1986), 150 Ill. App. 3d 41, 501 N.E.2d 1270.) The duty of the trial court in the first instance is to decide whether, as a matter of law, the *res ipsa loquitur* doctrine applies at all. *Spidle v. Steward* (1980), 79 Ill. 2d 1, 402 N.E.2d 216.

██ To avail itself of the *res ipsa loquitur* doctrine, the plaintiff must demonstrate that he was injured (1) in an occurrence that would not have occurred in the absence of negligence, (2) by an instrumentality or agency under the management or control of the defendant, and (3) under circumstances indicating the injury was not due to any voluntary act or neglect on the part of the one claiming the doctrine. *Lynch v. Precision Machine Shop, Ltd.* (1982), 93 Ill. 2d 266, 443 N.E.2d 569.

██ In the instant case, proffered testimony indicated that a crack or blister in a vessel at the refinery probably reacted with the hydrogen inside the vessel and led to the subject explosions. However, the mere identification of the probable cause does not determine whether the injury would have occurred in the absence of negligence. (See *Coffey v. Brodsky* (1987), 165 Ill. App. 3d 14, 518 N.E.2d 638.) If there is an inference of general negligence and proof of specific negligence, it should then be for a jury to determine under which theory, if any, the plaintiff should prevail. (*Erckman v. Northern Illinois Gas Co.* (1965), 61 Ill. App. 2d 137, 210 N.E.2d 42.) The court properly allowed both specific negligence and *res ipsa loquitur* to go to the jury; a directed verdict was not warranted by the facts at bar.

██ We next consider the matter of the trial court's refusal to give the defendant's jury instruction calling for a determination of whether Mr. Bart's status was that of a licensee or an invitee. Upon appeal the defendant urges that a determination of Bart's legal status would critically impact the nature of the duty it owed him. It asserts that the trial court's failure to properly instruct the jury removed a vital issue from the jury's domain and resulted in the imposition of a higher standard of care than was warranted by the evidence. This court finds that the subject instructions were not relevant to any issue raised or framed in the pleadings of this case or in the formal proof. The defendant has not sustained his burden of proving that an evidentiary basis existed upon which to enter the proffered instructions.

### III

Among the plethora of issues raised by the defendant on this ap-

peal there is another group of asserted errors which deserve comment, even though they are not in any way dispositive of the appeal. We note that the discovery process was fairly administered and the defendant's objections pertaining thereto will not be addressed by this court. Further, the extensive evidence of $H_2S$ gas is irrelevant to the issues and should not have been admitted over objection at trial.

■■ The defendant contends that the trial court erred in admitting the testimony of the plaintiff's experts because they lacked the necessary skill and experience to render an opinion. The sufficiency of qualifications of an expert rests largely in the sound discretion of the trial judge. The degree and manner of knowledge and experience required of an alleged expert is directly related to the complexity of the subject matter and the corresponding likelihood of error by one insufficiently familiar therewith. (*People v. Park* (1978), 72 Ill. 2d 203, 380 N.E.2d 795.) After assessing the admission of the expert testimony in the trial court on the basis of the assistance it provided for the trier of fact, we sustain the introduction of the testimony.

## IV

■■ Upon cross-appeal, the plaintiff asserts that the trial court erred in dismissing its counts based upon alleged violations of the Public Utilities Act (Ill. Ann. Stat., ch. 111²/₃, par. 1—101 *et seq.* (Smith-Hurd 1988)) and the Gas Pipeline Safety Act (Ill. Ann. Stat., ch. 111²/₃, par. 551 *et seq.* (Smith-Hurd 1988)). Also raised for review is the propriety of the trial court's denial of the plaintiff's request for prejudgment interest.

The Public Utilities Act (Ill. Ann. Stat., ch. 111²/₃, par. 1—101 *et seq.* (Smith-Hurd 1988)) regulates the operation of public utilities. The trial court ruled that this defendant was not a public utility within the meaning of the Act and dismissed the appropriate counts from the complaint.

We affirm the trial court's dismissal. The mere fact that the thing sold by a company is fuel or a product or service ordinarily sold by public utility companies does not of itself render the seller a public utility. (*Mississippi River Fuel Corp. v. Illinois Commerce Comm'n* (1953), 1 Ill. 2d 509, 116 N.E.2d 394.) In *Mississippi River Fuel Corp.*, the court stated:

> " 'A public utility implies a public use of an article, product or service, carrying with it the duty of the producer or manufacturer, or one attempting to furnish the service to serve the public and treat all persons alike, without discrimination.' *** When once determined to be a public utility under the statute

the company must furnish all who apply, and the service it furnishes must be without discrimination and without delay.' " (1 Ill. 2d at 516, 116 N.E.2d at 398, quoting *Highland Dairy Farms Co. v. Helvetia Milk Condensing Co.* (1923), 308 Ill. 294, 300-01.)

In the instant case the defendant has not held itself out to be a public utility and there has been no proffered evidence that the Illinois Commerce Commission has exercised jurisdiction over the defendant as a public utility.

■ Next, the Illinois Gas Pipeline Safety Act (Ill. Ann. Stat., ch. 111²/₃, par. 551 *et seq.* (Smith-Hurd 1988)) promulgates safety standards for the operation of pipeline facilities. The trial court dismissed the appropriate counts concerning the Act from the plaintiff's complaint in ruling that the Act did not provide civil damages for an individual plaintiff.

We sustain the trial court's dismissal. Under the statute, actions to recover penalties under the Act must be brought in the name of the People of the State of Illinois. The action is to be prosecuted by the Attorney General. (See Ill. Ann. Stat., ch. 111²/₃, par. 557(c) (Smith-Hurd 1988).) We have found no case authority where a reviewing court has implied a private cause of action from the Act.

■ Lastly, we sustain the trial court's denial of prejudgment interest. There is no statutory authority authorizing a trial court to impose prejudgment interest.

For all of the foregoing reasons the judgment of the circuit court of Will County is affirmed in part and reversed in part and remanded for further proceedings and a new trial consistent with this opinion.

Affirmed in part; reversed in part and remanded.

STOUDER, P.J., and SCOTT, J., concur.