ERIC DECKER, Plaintiff-Appellee, v. DOMINO'S PIZZA, INC., Defendant-Appellant.

Fifth District   No. 5—93—0379

Opinion filed December 30, 1994.

John L. McMullin and Kenneth M. Burke, both of Brown & James, P.C., of St. Louis, Missouri, for appellant.

Lee W. Barron, of Strang & Barron, P.C., of Jerseyville, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

Defendant, Domino's Pizza, Inc., appeals from the denial of its post-trial motion for a judgment notwithstanding the verdict, a directed verdict in its favor, or in the alternative, a new trial, by the circuit court of Madison County. The underlying cause of action filed by plaintiff, Eric Decker, was a negligence action brought by plaintiff for injuries he sustained during an armed robbery at one of defendant's stores located in North Alton. The case was tried to a jury, and at the close of all evidence, the jury returned a verdict in favor of plaintiff for $400,000 but found plaintiff 25% at fault for a net verdict of $300,000.

Defendant presents these issues for our review: (1) the trial court erred in not ruling that defendant's duty was limited to the extent of its undertaking; (2) the trial court erred in failing to strike the testimony of plaintiff's expert because plaintiff failed to establish that plaintiff's expert was qualified to render his opinions; (3) plaintiff's expert based his opinions on hearsay testimony from a cellmate of the robber and there was no foundation that this basis for plaintiff's expert testimony was the type reasonably relied upon by experts in the field; (4) the trial court erred in limiting the testimony of defendant's expert; and (5) the trial court erred in denying defendant's motion for a mistrial based upon plaintiff's counsel's improper plea for the jury to act as "the conscience of this community." We affirm.

## I

On the day of the incident, December 18, 1988, plaintiff was working the evening shift at defendant's store in North Alton. Shortly before the robbery, some employees drove up to the store and observed a suspicious person in the store's vicinity. Two of these employees went inside the store and reported the suspicious-looking person to the employees, including plaintiff. Plaintiff and another employee, Mario Voyles, went outside to investigate this suspicious person. Once outside, plaintiff stopped to talk with another employee who was sitting in her car. Voyles walked toward the suspicious person. Plaintiff then heard Voyles scream, "He's got a gun." Voyles ran back into the store. By the time plaintiff realized what was happening and started for the door, the robber had reached plaintiff,

began to hit him over the head with a pistol, and kicked him in the lower back. The robber then grabbed plaintiff by the collar, lifted him up, and forced him into the store. Once inside the store, the robber demanded money. Rod Kalina, plaintiff's coemployee, informed the robber that the safe was a time-delay safe and then gave the robber the money in the till.

After taking the money, the robber shot Kalina in the leg and began to pistol-whip plaintiff, demanding that plaintiff open the safe. Plaintiff told the robber, "I can set this, but you're going to have to wait 15 minutes before we can open it." The robber responded: "You're lying, you're lying. Open the safe. Open the safe." The robber continued to hit plaintiff on the head and attempted to shoot plaintiff in the face several times; however, the gun did not fire. Shortly thereafter, the robber fled from the store.

As a result of this attack, plaintiff sustained lacerations to his head and hands and was hospitalized for three days. Plaintiff's family and friends testified to the changes they observed in plaintiff's personality since the robbery. Plaintiff also complains of back problems since the attack and reportedly continues to suffer from nightmares and headaches at least several times a week. At trial, plaintiff presented no medical testimony as to his injuries and no testimony with respect to the medical bills or lost wages.

Prior to this incident, defendant formed a standards committee to review proposed security measures for implementation at defendant's stores. The committee would make recommendations as to what security measures should be adopted. The standards committee was composed of elected franchisees and defendant's corporate representatives. Mark B. Raterman, the franchisee and owner of the North Alton store where plaintiff worked and the robbery occurred, was a member of this committee.

The standards committee reviewed various crime-prevention studies, including a study done by the Southland Corporation. This study found that a cash-management system tended to prevent robberies. The committee adopted the cash-management system, and defendant made the system mandatory for all stores. In addition to the cash-management system, defendant, through its protective services department created prior to the robbery in question, produced and distributed to all franchisees a store safety kit and other literature related to robbery prevention.

Defendant also employed a franchise consultant to assure that local franchise stores comply with defendant's standards, including robbery prevention. Also, the franchise consultant is to make sure that MIT's (management in training), such as plaintiff, were being

trained in safety and security. However, the franchise consultant is not directly responsible for the training of MIT's, which is the responsibility of the franchise owner. Although the training of MIT's is the franchise owner's responsibility, defendant requires certification of the local franchisee's trainer/manager.

At trial, four experts testified, three for defendant and one for plaintiff. Plaintiff's expert was David Hayes, an assistant chief of detectives, who was the detective in charge of the investigation of this robbery. Edward McGunn, a safe manufacturer, Dr. Lawrence Sherman, a security consultant, and George Ralph, defendant's national director for security, testified for defendant.

Plaintiff's witness gave opinion testimony that the robber beat plaintiff up because he did not believe that plaintiff could not open the safe. Detective Hayes' testimony concerning the time-delay safe as one of the causes of plaintiff's injuries was based on a statement made by a cellmate of the robber. This testimony was elicited by defendant's counsel on cross-examination. No timely objection was made. Later during the cross-examination, defendant objected to this testimony on the grounds that it was not the type reasonably relied upon by experts in the field and that it was hearsay and unreliable. The trial court overruled this objection.

Subsequently, defendant called its expert, Dr. Lawrence Sherman. Dr. Sherman testified that the primary cause of the robbery was that the robber was intoxicated and using cocaine. Plaintiff objected to the statement and moved to strike it. The court sustained plaintiff's objection. The court held a conference in chambers during which it was disclosed that defendant's expert based his testimony on a transcript from a criminal proceeding involving the robber, which transcript was not disclosed to plaintiff either during the deposition of Dr. Sherman or in a supplemental disclosure under Supreme Court Rule 220 (134 Ill. 2d R. 220). Upon resumption of the proceedings, the court barred any further mention of the robber's intoxication or cocaine use and instructed the jury to disregard defendant's expert's comment with respect to the robber's intoxication and cocaine use.

In closing argument, plaintiff's counsel asked the jury to act as the conscience of the community in rendering its verdict, to which defendant objected. Defendant's motion for a mistrial based on this argument was denied. Defendant also objected to certain of plaintiff's jury instructions. These objections were overruled. The jury returned a net verdict of $300,000 in favor of plaintiff. Defendant's subsequent post-trial motions were denied. Defendant now appeals.

## II

Defendant strenuously argues that the extent of its undertaking should be construed narrowly and, hence, the only duty voluntarily assumed by defendant is the mandatory requirement that its franchisees use a cash-management system which only consists of a time-delay safe. Defendant further asserts that the trial court imposed a greater duty on defendant than defendant undertook, because the trial court failed to limit its duty to the use of a time-delay safe.

Under the voluntary-undertaking theory of liability, "[o]ne who voluntarily undertakes to render services to another is liable for bodily harm caused by his failure to perform such services with due care or with such competence and skill as he possesses." (*Siklas v. Ecker Center for Mental Health, Inc.* (1993), 248 Ill. App. 3d 124, 131, 617 N.E.2d 507, 512.) The duty of care imposed upon a defendant is limited to the extent of its undertaking. (*Frye v. Medicare-Glaser Corp.* (1992), 153 Ill. 2d 26, 32, 605 N.E.2d 557, 560; *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 210, 399 N.E.2d 596, 599.) Liability is imposed upon a defendant who voluntarily undertakes a duty but performs the undertaking negligently, if the negligence is the proximate cause of the injury to the plaintiff. (*Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 126, 431 N.E.2d 1038, 1040.) Whether a defendant breached its duty is to be determined by the trier of fact. *Siklas v. Ecker Center for Mental Health, Inc.* (1993), 248 Ill. App. 3d 124, 132, 617 N.E.2d 507, 513.

Regardless of whether defendant initially had a duty to protect plaintiff against the criminal acts of third parties, defendant voluntarily undertook to establish a security program to deter robbery and to protect its employees from harm in the event of a robbery. (*Martin v. McDonald's Corp.* (1991), 213 Ill. App. 3d 487, 490, 572 N.E.2d 1073, 1076.) To this effect, defendant established the protective services department, a division of its corporation designated to handle security-related matters. The protective services department generated materials and literature on safety and robbery prevention for distribution to all stores in defendant's "family." The literature set forth those procedures that employees were to follow in order to discourage robberies, and it set forth those steps that employees were to take in order to prevent harm to themselves should a robbery occur. Defendant's training manuals and materials included sections on safety and security for both in-store and delivery situations. Defendant also set up a hot line for security-related matters in the field.

Additionally, defendant created a standards committee to review studies on crime prevention and to determine the type of crime-prevention measures the corporation and its franchisees would adopt

for use in their stores. The committee was composed of corporate and franchise representatives. Upon review of various crime-prevention studies and measures, the committee recommended adoption of the cash-management system, which includes use of a time-delay safe. The committee chose this system of protection because it tended to discourage robberies since the store safe cannot be readily opened. Use of the cash-management system and time-delay safes was mandatory for all corporate and franchise stores. The time-delay safes were made available to franchisees through defendant's equipment subdivision. Defendant also provided store safety kits which contained posters warning of the time-delay device on the in-store safe.

Further, defendant employs franchise consultants who make regular visits to franchise stores. The franchise consultant makes sure that franchise stores comply with defendant's standards. Each store is evaluated on the product, service, training of employees, and safety and security aspects of the franchisee's operations. Although the franchise owner is responsible for the actual training of its MIT's, defendant requires that all trainers be certified by defendant.

■ These facts clearly demonstrate that defendant undertook to do more than just provide a time-delay safe to its franchisees. Defendant undertook to provide a security program that would deter robbery and protect employees from harm in the event of a robbery by providing the appropriate training and information. Accordingly, defendant had the duty to exercise reasonable care in the performance of its duty, and liability could be imposed upon defendant for the negligent performance of the duty it voluntarily undertook.

To support its contention that its duty should be narrowly construed, defendant relies on *Frye v. Medicare-Glaser Corp.* (1992), 153 Ill. 2d 26, 605 N.E.2d 557. In *Frye,* the special administrator of the estate of a deceased patient brought suit against a pharmacy on a theory of negligent undertaking. The decedent had been prescribed the drug Fiorinal following surgery. Decedent's mother had the prescription filled at Medicare-Glaser Pharmacy. The pharmacist on duty affixed two labels, one of which was a picture of a "drowsy eye" and contained the words "May Cause Drowsiness." No warnings were given regarding the effect of drinking alcohol while taking the drug. Decedent consumed alcohol while using Fiorinal and consequently died. Our supreme court held that a pharmacy that voluntarily undertook to warn of the risk of drowsiness while taking the drug Fiorinal was not negligent in failing to warn of the dangers of consuming alcohol when using the drug. The plaintiff had argued that the extent of the pharmacy's undertaking was to warn of all

potential dangers associated with taking Fiorinal, but the supreme court found this to be an overly broad interpretation. The supreme court concluded that the extent of the pharmacy's undertaking was to warn the consumer of drowsiness but not to warn of all other potential side effects of the drug. The *Frye* court cited public policy reasons to support its construction of the defendant's undertaking. The court reasoned that (1) pharmacists would refrain from using warning labels on prescription drugs, thereby depriving consumers of beneficial information, if by warning of one side effect they would be assuming the duty to warn of all side effects and (2) it would be impractical to warn of all side effects. Lastly, the court pointed out that it is the duty of the prescribing physician to convey the appropriate warnings regarding the use of a prescribed medication.

We believe *Frye* is readily distinguishable from the instant case. Unlike the pharmacy in *Frye*, which only undertook to warn customers of a specific side effect of a drug, here defendant undertook to establish a security program whose purpose and goal were to deter robberies and to protect employees from harm should a robbery occur. Moreover, plaintiff in this case is not arguing that defendant had a duty to utilize *every* conceivable crime-prevention measure available. Nor does plaintiff argue that defendant should have used *all* robbery-prevention techniques. Instead, plaintiff argues that defendant undertook to provide certain robbery-prevention measures which defendant was obligated to perform with reasonable care. Accordingly, defendant's reliance on *Frye* is misplaced. Considering the totality of defendant's actions with respect to robbery-prevention measures, we conclude that there is ample support in the record for the trial court's determination that defendant too narrowly defined the scope of its undertaking. Further, we find there was ample evidence for the jury to find that defendant did not act with reasonable care in performing the services it undertook to provide.

## III

Defendant next argues that the trial court erred in failing to strike the testimony of plaintiff's expert, because plaintiff failed to establish that the expert was qualified to render his opinion.

It is within the discretion of the trial judge to permit expert testimony that he believes will aid in the understanding of the issues in the case. (*Miller v. Rokita* (1985), 131 Ill. App. 3d 774, 778, 476 N.E.2d 26, 28.) "Whether a witness is competent to give an expert opinion is a question of fact for the trial court, and the court's determination will be disturbed only upon a clear showing of abuse of discretion." (*Miller*, 131 Ill. App. 3d at 778, 476 N.E.2d at 28.) Fur-

ther, an expert witness' knowledge of the matter about which he is testifying may be acquired from study or experience or both. (*Miller*, 131 Ill. App. 3d at 778, 476 N.E.2d at 29.) Thus, an expert witness "whose knowledge is based upon practical experience is no less an expert than one who possesses academic or scientific knowledge." *Miller*, 131 Ill. App. 3d at 778, 476 N.E.2d at 29.

■ At the time of the trial, plaintiff's expert, Detective Hayes, was detective sergeant assistant chief of detectives for the Alton police department. Hayes worked for the Alton police department for 10 years, six of which he worked as a detective. Hayes was assigned to the special operations unit that investigates special problems and worked as a field detective investigating major felonies for five years. Hayes had investigated approximately 100 to 150 armed robberies in the Alton area. While interviewing suspects that have confessed to armed robbery, Hayes had discussed their reasons for selecting a particular place to rob. Also, Hayes carried out the investigation of the robbery of defendant's store in this case. Therefore, we cannot find that the trial court erred or abused its discretion by refusing to strike Hayes' testimony.

The third argument defendant raises is that plaintiff's expert based his opinions on hearsay testimony from a cellmate of the robber, and there was no foundation that this basis for plaintiff's expert testimony was the type reasonably relied upon by experts in the field.

■ We note that defendant did not specifically object to the hearsay testimony given by Hayes on cross-examination. Defendant elicited the hearsay testimony when he asked Hayes the basis of his expert opinion. Hayes revealed that part of his expert opinion as to why the robber had beaten plaintiff was based upon his interview with the robber's cellmate. Defendant continued to ask Hayes about his conversation with the cellmate; however, at no time did defendant object to this hearsay testimony. Defendant only raised an objection to the hearsay testimony elicited earlier in the cross-examination when plaintiff objected to defendant's attempt to reask questions already answered by Hayes regarding the basis of his opinions. A failure to make a timely objection results in a waiver of the issue. (*Turney v. Ford Motor Co.* (1981), 94 Ill. App. 3d 678, 685, 418 N.E.2d 1079, 1085.) Once an objection is waived, the evidence is given its natural probative effect and force, even if the evidence is improper or generally incompetent. (*Miller v. Rokita* (1985), 131 Ill. App. 3d 774, 779, 476 N.E.2d 26, 29.) Accordingly, we conclude that because defendant failed to make a timely objection to the hearsay testimony, the issue is waived.

Defendant maintains that the trial court erred in ruling that defendant's expert witness' opinions exceeded the scope of the disclosure made pursuant to Rule 220. Further, defendant argues that the court improperly prohibited Dr. Sherman from testifying as to any of the opinions he might have based upon his review of police records and reports.

■ Supreme Court Rule 220 (134 Ill. 2d R. 220) provides that the expert's direct testimony at trial may not be inconsistent with or go beyond the fair scope of facts known or opinions disclosed in discovery proceedings. (*Bart v. Union Oil Co.* (1989), 185 Ill. App. 3d 64, 69, 540 N.E.2d 770, 773; *Fogarty v. Parichy Roofing Co.* (1988), 175 Ill. App. 3d 530, 541, 529 N.E.2d 1055, 1063.) The purpose of Rule 220 is to eliminate surprise at trial and to allow the parties to ascertain the basis of and rely upon the expert opinions disclosed through discovery. (*Bart*, 185 Ill. App. 3d at 69, 540 N.E.2d at 773.) The rule further provides that an expert cannot be prevented from "testifying as to facts or opinions on matters regarding which inquiry was not made in the discovery proceedings." (134 Ill. 2d R. 220(d).) However, the committee comments for paragraph (d) limit this qualification stating that it has "only limited application in light of the requirement that a party continuously supplement discovery concerning the opinions of such witnesses." (134 Ill. 2d R. 220(d), Committee Comments, at 182.) Thus, in accordance with paragraph (d), the permissible scope of an expert's testimony is limited to those opinions expressed in response to discovery. *Bart*, 185 Ill. App. 3d at 69, 540 N.E.2d at 773.

■ On direct examination, defendant's expert witness, Dr. Sherman, testified that the primary cause of the robbery was the decision of the robber "to go out and commit a robbery" and that "the robber was exacerbated by his being drunk and on cocaine at the time." Dr. Sherman stated that he based his opinion on the deposition, the list of witnesses, and police records and reports. Plaintiff objected and moved to strike this testimony. The court sustained plaintiff's objection and then held a conference in chambers with counsel. The court stated that the robber's cocaine use was not in evidence and the robber's intoxication and cocaine use were not an issue. More importantly, the court expressed concern about the prejudicial nature of the comment. When the court inquired about the source of the expert's opinion with respect to the robber's cocaine use, it was revealed that his opinion was not based on the police record and reports but on a transcript of a criminal proceeding. This information was not included in the supplemental Rule 220 disclosure, and the transcript was not part of the trial record in this case. Further, Dr.

Sherman, in his deposition, made no reference to intoxication or cocaine use as the basis for any opinions as to the cause of the crime. Consequently, the court ruled that the opinions defendant sought to elicit from Dr. Sherman were beyond the scope of the Rule 220 disclosure and barred the expert's testimony with respect to any opinions based upon the robber's intoxication and cocaine use. Under these circumstances, we conclude that the trial court did not abuse its discretion (see *Sohaey v. Van Cura* (1994), 158 Ill. 2d 375, 634 N.E.2d 707) in limiting Dr. Sherman's testimony regarding any opinions he formulated based upon the robber's intoxication and cocaine use.

## IV

Lastly, defendant contends that the trial court erred in denying defendant's motion for a mistrial based upon the closing argument of plaintiff's attorney, who asked the jury to be the "conscience of the community."

Attorneys are allowed broad latitude in closing argument. (*Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 119, 576 N.E.2d 918, 932.) A judgment will be reversed only when the challenged remarks prevent defendant from receiving a fair trial. (*Moore v. Centreville Township Hospital* (1993), 246 Ill. App. 3d 579, 590, 616 N.E.2d 1321, 1329, *rev'd* (1994), 158 Ill. 2d 543, 634 N.E.2d 1102 (on grounds that employer's contribution liability is limited to amount of workers' compensation benefits it has paid to its injured employee).) To determine whether an improper closing argument has denied a party a fair trial, the reviewing court "gives considerable deference to the trial court because it is in a superior position to assess the accuracy and effect of counsel's statements." (*Moore*, 246 Ill. App. 3d at 590, 616 N.E.2d at 1329.) Further, even when a party has preserved the issue, only a showing of substantial prejudice will warrant a reversal. *Moore*, 246 Ill. App. 3d at 590, 616 N.E.2d at 1329.

■ Although we agree with defendant that it was improper for counsel to ask the jury to act as the conscience of the community, the trial court could reasonably conclude that the effect of counsel's argument was not so prejudicial as to deny defendant a fair trial. The court immediately informed the jury that it was to determine the facts of the case under the law and the instructions given to it. Furthermore, in light of the jury's reduction of plaintiff's award by $100,000 for comparative fault, it is apparent that this argument did not so inflame the passions and prejudices of the jury that the verdict and award were clearly the result of prejudice. Therefore, we find

532

that the trial court did not err in denying defendant's motion for a mistrial and that the verdict and award are not the result of passion or prejudice.

For the foregoing reasons, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

MAAG, P.J., and CHAPMAN, J., concur.