NO. 4-96-0166 

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

In Re:  the Marriage of                 )    Appeal from

CRYSTAL K. FIELDS,                      )    Circuit Court of 

          Petitioner-Appellant,         )    Vermilion County

          and                           )    No. 95D20

RICHARD ALLEN FIELDS,                   )

          Respondent-Appellee.          )    Honorable

                                        )    Gordon R. Stipp,

                                        )    Judge Presiding.

_________________________________________________________________

          JUSTICE STEIGMANN delivered the opinion of the court:

          In January 1995, petitioner, Crystal K. Fields, filed a

petition for dissolution of her marriage with respondent, Richard

Allen Fields.  In March 1995, Richard filed a petition requesting

temporary visitation with the parties' two children, M.F. and

A.F.  Crystal subsequently filed a petition requesting temporary

custody and support of the children.  In May 1995, pursuant to an

agreement reached by Crystal and Richard during a hearing on the

petitions, the trial court entered a temporary order granting

custody of the children to Crystal and visitation privileges to

Richard, subject to certain restrictions.  In October 1995, a

successor judge conducted a final hearing on dissolution and all

other pending issues, including visitation.  The court subse-

quently entered an order dissolving Crystal's and Richard's mar-

riage, and granting Richard reasonable visitation with both

children, without restrictions or required counseling. 

          Crystal appeals, arguing that the trial court erred by

(1) determining that the original court's decision in the tempo-

rary relief hearing was res judicata, and refusing to allow evi-

dence that was or could have been introduced at the prior hear-

ing; (2) allocating more than half of the marital debts to

Crystal; (3) placing the burden on her to show that restricted

visitation should be continued as provided by the temporary

order; (4) determining that M.F.'s counselor could not testify as

an expert and denying the introduction of the counseling center's

billing records; and (5) failing to apply the proper standard

when it refused to order counseling.  We affirm all portions of

the judgment except with regard to the visitation order; because

we agree with Crystal's first argument, we reverse and remand for

a de novo hearing on the issue of visitation.

                               I. BACKGROUND

          Crystal and Richard married in September 1991.  They

had two children during their marriage, M.F., born in November

1989, and A.F., born in July 1994.

          The parties separated in June 1994, and the children

remained with Crystal.  After the separation, Richard visited

M.F. and A.F. on a regular basis.  In November 1994, Crystal

began requiring Richard's visits to be supervised because she

believed that Richard was sexually abusing M.F.  In January 1995,

Crystal filed a petition for dissolution of the marriage.  In

March 1995, Richard filed a petition requesting temporary reason-

able visitation with M.F. and A.F.  Crystal subsequently filed a

petition requesting temporary custody and support of their children.

          During April and May 1995, the original trial judge,

Judge Borbely, conducted a partial hearing on the petitions for

temporary support, custody, and visitation.  Because the parties

are familiar with the evidence, we review it only to the extent

necessary to put Crystal's arguments in context.  Linda Jacques,

an investigator for the Department of Children and Family Servic-

es (DCFS), testified that in November 1994 and January 1995 she

investigated two allegations that M.F. had been sexually abused. 

Jacques determined that the initial report of abuse was unfound-

ed.  After conducting an investigation of the second report of

abuse, including interviews with M.F., Richard, and Dr. Frank

Stephens, a pediatrician who examined M.F. in December 1994,

Jacques determined that the report was indicated for sexual

penetration of M.F. by Richard.  

          The trial court also allowed into evidence Dr.

Stephens' evidence deposition, in which he testified that Crystal

brought M.F. for an examination in December 1994.  During that

examination, Crystal reported that M.F. exhibited vaginal and

rectal redness, wet her bed five or six times a week, masturbated

frequently, and had experienced an episode of unexplained vaginal

bleeding around November 1994.  Crystal also told Dr. Stephens

that she suspected sexual abuse.  Dr. Stephens determined that,

based upon the history provided by Crystal and the physical

examination, M.F. had been sexually abused.  On cross-examina-

tion, Dr. Stephens testified that Crystal had told him that the

initial report of abuse to DCFS resulted in an indicated report. 

Dr. Stephens further stated that if the conclusions of the

initial DCFS report were otherwise and if there had been no

vaginal bleeding, he would be unable to conclude that sexual

abuse had occurred, although he would still have concerns based

solely on the physical examination.  

          Dr. Padmasharee Reddy, M.F.'s pediatrician, testified

that she examined M.F. in November 1994 and found no physical

evidence of abuse.  Sarah Baron, Crystal's 12-year-old daughter

from a previous marriage, testified that near the end of 1994,

M.F. climbed on top of her and told her that M.F. and Richard

"rub butts."  Sarah also testified that she listened to a conver-

sation between Richard and M.F. during which Richard told M.F. if

she broke "the secret," Richard would go to prison.         

          Crystal testified that in November 1994 she first

suspected that Richard may have abused M.F. because of M.F.'s

statement to Sarah.  Crystal denied telling Dr. Stephens that the

initial DCFS report had resulted in an indicated finding. 

Crystal also stated that M.F. masturbates excessively, is often

angry, and displays violent behaviors.  

          Richard testified and denied sexually abusing M.F. 

Richard also stated that he was fired from two jobs for sexual

harassment, although he denied harassing the female coworkers. 

On cross-examination, Richard stated that prior to being fired

the second time in 1994, he was accused by the coworker of more

than one incident of sexual harassment.  Richard also stated that

he was a heavy drinker prior to May 1993, and when he drank he

was verbally abusive to Crystal.  

          On the third day of testimony, the trial court, the

parties' attorneys, and the guardian ad litem met in chambers and

discussed a settlement agreement.  After that discussion took

place, the court stated the following:

               "Mr. and Mrs. Fields, let me describe

          for you folks just exactly what has happened

          during the recess.  ***

               When we began the recess and met in

          chambers, the subject of our discussion,

          first of all, was [Richard's attorney's]

          motion for the Court to conduct an interview

          in chambers with M.F..  And in the process of

          discussing that motion, our discussion

          evolved into what I would describe as a set-

          tlement conference.  And I want the two of

          you to understand just exactly what my pro-

          cess and procedure is in conducting such a

          process.  The best way I can describe it is

          this:

               Each of your attorneys and [the guardian

          ad litem] will have an opportunity more or

          less informally to describe to the Court any

          additional evidence that they would have. 

          They are all allowed to make any arguments

          that they want to make based on the evidence

          -- assuming that everything comes out just

          the way they expected it would in the presen-

          tation of evidence.  And then based on that I

          have attempted to give them some guidance as

          to where we might end up if things go just

          the way they anticipate.  ***  I have not

          ruled on these matters.  But in conducting a

          settlement conference I do attempt to give

          the parties some guidance.  ***

               At the conclusion of all of that I un-

          derstand [the attorneys] have met with [the]

          clients and that you have now been able to

          reach an agreement that will dispose of the

          temporary issues ***."

The parties indicated to the court that they had reached an

agreement.  The court approved the agreement, and stated the

following:

               "I don't think the record is sufficient

          to support a specific finding of abuse in

          this case.  That doesn't mean that I don't

          have concerns.  I do.  ***  [T]hat is the

          reason that this agreement contains a coun-

          seling component."

          The trial court subsequently entered a written order

reflecting the settlement reached during the temporary relief

hearing.  The court granted (1) Crystal temporary custody of M.F.

and A.F., and (2) Richard "reasonable visitation privileges" with

the children subject to certain terms and conditions, including

that all visits had to be supervised by one of Richard's siblings

or parents.  The court also ordered both parties to seek counsel-

ing and to make the children available for counseling, and

specifically noted that the order was "by its terms temporary."

          In October 1995, a different judge, Judge Stipp, con-

ducted the hearing on dissolution and all other pending issues,

including visitation.  Prior to hearing any evidence, the trial

court ruled that it was bound by the findings of Judge Borbely at

the temporary relief hearing, and it would not allow evidence

that was or could have been introduced at that prior hearing--

namely, evidence regarding any occurrence prior to May 26, 1995. 

The court allowed those portions of the transcript of the tempo-

rary relief hearing regarding Dr. Stephens' deposition and

Jacques' testimony, but, only for the limited purpose of founda-

tion.  After hearing testimony and arguments, the court granted

the dissolution and reserved a ruling on the visitation issue. 

In December 1995, the court entered the judgment of dissolution,

granted Crystal sole custody of M.F. and A.F., and granted

Richard reasonable visitation without any restrictions or condi-

tions. 

                              II. VISITATION

          Crystal first argues that the successor trial judge,

Judge Stipp, erred by (1) determining that the decision of Judge

Borbely, the original trial judge in the temporary relief hear-

ing, was res judicata, and (2) refusing to allow evidence at the

October 1995 hearing that was or could have been introduced at

the April-May 1995 temporary relief hearing.  We agree.          

          Initially, we address Richard's argument that because

Crystal failed to make an offer of proof, she waived for review

her contentions that the trial court erred by excluding the

testimony of (1) Patricia Kaine (Richard's former coworker) and

(2) M.F.'s counselor, Kathryn McGee.  We agree that Crystal

failed to make an adequate offer of proof regarding Kaine's

testimony.  Accordingly, because the nature of that evidence is

not obvious, we hold that Crystal has waived that particular

contention of error.  See Holder v. Caselton, 275 Ill. App. 3d

950, 955, 657 N.E.2d 680, 685 (1995).  

          However, we do not agree that Crystal waived her

contention of error regarding McGee's testimony.  A formal offer

of proof is not required when the circumstances and the question

itself sufficiently indicate the purpose and substance of the

evidence sought, and when the question is in proper form and

clearly admits of a favorable answer.  In re A.M., 274 Ill. App.

3d 702, 709, 653 N.E.2d 1294, 1299 (1995).  In addition, a

statement by counsel may be sufficient, particularly where there

is no statement by the court, opposing counsel, or any witness

disputing counsel's statement.  A.M., 274 Ill. App. 3d at 709,

653 N.E.2d at 1299.  During her opening statement, Crystal's

trial counsel set forth, with particularity, both the purpose and

substance of McGee's testimony; counsel's statements were undis-

puted.  Further, the questions asked of McGee sufficiently indi-

cate the purpose and substance of the evidence sought through her

testimony.  The better practice would have been for Crystal's

trial counsel either to explicitly make a formal offer of proof

or to inform the court that she wished to make representations in

lieu of that formal offer.  Had Crystal's counsel done so, then

the court or Richard could state any objection they might have to

proceeding upon representations alone.  Nonetheless, on this

record we conclude that Crystal's failure to make a formal offer

of proof did not result in waiver.

          In addition, Crystal contends that the trial court

erred during the final hearing when it excluded other evidence

that Crystal had introduced or could have introduced at the

temporary relief hearing--namely, Crystal's testimony regarding

M.F.'s behaviors, Richard's testimony regarding his loss of two

jobs for sexually harassing female coworkers, Dr. Stephens' evi-

dence deposition, and prior testimony of DCFS investigator

Jacques regarding an indicated finding that Richard abused M.F. 

The nature and purpose of this excluded evidence are obvious on

this record.  Thus, formal offers of proof were not necessary to

preserve this issue for review before this court.  See Smith v.

Black & Decker U.S., Inc., 272 Ill. App. 3d 451, 458, 650 N.E.2d

1108, 1114 (1995).          

          Section 603(a) of the Illinois Marriage and Dissolution

of Marriage Act (Act) provides that "[a] party to a custody

proceeding *** may move for a temporary custody order."  750 ILCS

5/603(a) (West 1994).  The trial court may award temporary

custody under the best-interest-of-the-child standard set forth

in section 602 of the Act (750 ILCS 5/602 (West 1994)) after a

hearing or based solely on affidavits (if the parties do not

object).  750 ILCS 5/603(a) (West 1994).  Although section 603

refers only to "a custody proceeding," visitation is a form of

custody (In re Marriage of Allen, 265 Ill. App. 3d 208, 213, 638

N.E.2d 340, 344 (1994)), and is subject to the custody rules as

set forth in the Act (In re Custody of Myer, 100 Ill. App. 3d 27,

32, 426 N.E.2d 333, 336 (1981)). 

          A temporary order--by its very nature--is provisional

in character and continues only during the pendency of the

action.  In re Marriage of Simmons, 221 Ill. App. 3d 89, 91, 581

N.E.2d 716, 718 (1991).  When the matter that is the subject of

the temporary order comes before the court for a hearing on the

merits, the temporary order has fulfilled its purpose and is

superseded by the final--or permanent--order.  Simmons, 221 Ill.

App. 3d at 91, 581 N.E.2d at 719.  Once the trial court enters

the final order, an assumption arises that the court has thereby

adjusted for any inequity in its temporary orders.  In re Mar-

riage of Dunseth, 260 Ill. App. 3d 816, 827, 633 N.E.2d 82, 92

(1994).   

          The doctrine of res judicata provides that a final

judgment on the merits rendered by a court of competent jurisdic-

tion bars any subsequent actions between the same parties on the

same cause of action.  Rein v. David A. Noyes & Co., 172 Ill. 2d

325, 334, 665 N.E.2d 1199, 1204 (1996).  Because a temporary

visitation order is not a final judgment on the merits, such an

order cannot be regarded as res judicata of the issues raised by

the parties.  Smith v. Smith, 36 Ill. App. 2d 55, 60, 183 N.E.2d

559, 561 (1962).  Further, this court has also urged trial courts

to use caution in applying the doctrine of res judicata to perma-

nent child custody orders (to the extent any custody order is

ever permanent), as follows:

               "Generally, a court's order regarding

          child custody is res judicata as to facts

          which existed at the time the order was en-

          tered.  New conditions must establish a

          change in custody is warranted ***.  [Cita-

          tion.]  Courts should be cautious in deter-

          mining when to apply res judicata in child

          custody cases.  This doctrine should not be

          strictly applied to bar evidence when the

          most important consideration is the welfare

          of a child."  In re Marriage of Weaver, 228

          Ill. App. 3d 609, 616, 592 N.E.2d 643, 648

          (1992). 

          Because a temporary visitation order means just that--

particularly when a different judge presides at the hearing on

the merits, which will result in a permanent or final order--we

hold that a trial court must conduct a hearing regarding perma-

nent custody or visitation de novo.  During the final hearing,

the trial court should consider all factors which relate to the

best interests of the children.  See 750 ILCS 5/607 (West 1994). 

          We find support for our holding in the long-standing

principle that a party is entitled to a resolution of factual

questions by a trier of fact who has been afforded a full oppor-

tunity to assess the credibility of witnesses by observing their

demeanor.  See In re Marriage of Sorenson, 127 Ill. App. 3d 967,

969, 469 N.E.2d 440, 442 (1984).  In child custody cases, courts

have relied on this principle to hold that even when the parties

stipulate that a successor judge may resolve factual questions by

reviewing the record of prior proceedings, a new trial may still

be warranted where critical determinations necessarily hinge upon

the credibility of one witness over another.  Sorenson, 127 Ill.

App. 3d at 969, 469 N.E.2d at 442; see also In re Marriage of

Akins, 188 Ill. App. 3d 951, 953, 544 N.E.2d 1131, 1132 (1989).

          In addition, we note that neither section 606 of the

Act (which governs hearings related to permanent custody and

visitation) (750 ILCS 5/606 (West 1994)) nor section 607 of the

Act (which governs visitation privileges) (750 ILCS 5/607 (West

1994)) contains any language limiting the introduction of evi-

dence, unlike section 610(b) of the Act, which provides that the

trial court--when considering a petition to modify a custody

order--is limited to "[t]he facts that have arisen since the

prior judgment or that were unknown to the court" at the time of

the prior judgment (750 ILCS 5/610(b) (West 1994)).  Instead,

section 606 of the Act specifically provides that "[p]revious

statements made by [a] child relating to any allegations that the

child is an abused or neglected child" are admissible in a

custody or visitation hearing.  (Emphasis added.)  750 ILCS

5/606(e) (West 1994). 

          In the present case, Judge Borbely, the original judge,

entered the temporary visitation order pursuant to an agreement

reached by Crystal and Richard after three days of testimony at

the temporary relief hearing.  In approving the agreement, the

trial court specifically noted that the parties' attorneys had

informed it of additional evidence they would have presented had

the hearing continued.  That statement shows the court understood

the temporary nature of the order it was entering.  Levy v.

Skilling, 136 Ill. App. 3d 727, 729, 483 N.E.2d 917, 919 (1985)

(determination of whether an order is temporary or final is

governed by the order's substance).  Prior to hearing any evi-

dence at the October 1995 final hearing, Judge Stipp, the succes-

sor trial judge, ruled that he would not allow evidence that was

or could have been introduced at the April-May 1995 temporary

relief hearing, as follows:

               "Before proceeding to hear evidence, the

          court does wish to remind both counsel and

          state for the record that the court takes

          notice of the order for temporary relief

          entered by Judge Borbely on May 26th, 1995. 

                                   * * *

               Specifically, the court notes Paragraph

          3 of the order which is quoted as follows: 

          `That the allegation of the petitioner that

          [Richard] has been guilty of sexual abuse

          with regard to said children has not been

          established by the evidence.'  Further, the

          court notes that that order did, in fact,

          grant reasonable visitation to [Richard] with

          provisions *** primarily providing for spe-

          cific times and periods of visitation and

          with some supervision details specified in

          connection with the visitation arrangements.

                                   * * *

               Furthermore, the court is of the belief

          that on this particular issue, having been

          once litigated, the court is bound to follow

          the findings by Judge Borbely.  The court

          will be open and receptive to any and all

          evidence accruing from and after May 26th[,

          1995]; ***.  But the court does not intend to

          address and listen a second time to identical

          evidence previously presented in connection

          with the original orders for temporary re-

          lief."

After Crystal objected, the court stated the following:

               "I do note the order entered was a tem-

          porary order.  This is a final hearing.  I

          give high credence and value to the finding

          made by Judge Borbely, and it is my intention

          to examine the issue of restrictions on visi-

          tation based upon new evidence arising from

          and after May 26th[, 1995]."  

          On this record, we conclude that Judge Stipp, the

successor trial judge, erred by determining that he was bound by

the findings of Judge Borbely, the original judge, made during

the temporary relief hearing.  Thus, we hold that Judge Stipp

erred by excluding evidence that was or could have been presented

at the temporary relief hearing.  Accordingly, we reverse and

remand for a de novo hearing on the issue of visitation.

          In so concluding, we note that when parents are going

through a divorce, it is imperative that their minor children

have some order and stability in their lives pending the final

resolution of issues.  The overriding concern in custody and

visitation disputes is determining what will best serve the

interests of the children.  Section 603 of the Act was implement-

ed to (1) encourage informal and agreed determinations of tempo-

rary custody and visitation, (2) accelerate the process of

awarding temporary custody and visitation through the use of

affidavits, and (3) minimize disruptions in children's lives by

providing stability in their living environment and relationships

with their parents as quickly as possible.  See Ill. Ann. Stat.,

ch. 40, par. 603, Historical & Practice Notes, at 53 (Smith-Hurd

1980).  If the findings at a temporary hearing were binding at

the final hearing, the purposes of section 603 of the Act would

be defeated and the best interests of the children would not be

served.  Parties would no longer be willing to have the trial

court enter a temporary order based solely on affidavits or on

evidence adduced during truncated hearings.  Parties would be

forced either to forego temporary relief altogether or fully

litigate their cases during the temporary relief hearing when

otherwise they would not have chosen to do so.

                    III. PROPERTY AND DEBT DISTRIBUTION

          The material in this section is not to be published

pursuant to Supreme Court Rule 23.  Official Reports Advance

Sheet No. 15 (July 20, 1994), R. 23, eff. July 1, 1994.

[The following material is not to be published pursuant to

Supreme Court Rule 23.]

          Crystal also argues that the trial court erred by

allocating more than half of the marital debts to her.  Crystal

specifically contends that the court's refusal to grant her a

lump-sum reimbursement or short-term rehabilitative maintenance

was manifestly unjust in light of her voluntary post-separation

debt payments of $3,257.71 and the ultimate division of property

and debts.  We disagree.

          Section 503(d) of the Act (750 ILCS 5/503(d) (West

1994)) requires the trial court to divide the marital property in

just proportions.  Dunseth, 260 Ill. App. 3d at 831, 633 N.E.2d

at 94.  It is well settled that just proportions does not neces-

sarily mean mathematically equal shares.  Dunseth, 260 Ill. App.

3d at 831, 633 N.E.2d at 94.  Pursuant to section 503(d), the

trial court must consider many factors when dividing marital

property, including the duration of the marriage, the standard of

living established during the marriage, the value of the property

awarded to each spouse, the relevant economic conditions of each

spouse, whether the apportionment is in lieu of or in addition to

maintenance, and the age, health, occupation, employability,

liabilities, sources of income and needs of each party.  Dunseth,

260 Ill. App. 3d at 831, 633 N.E.2d at 94.  A reviewing court

must not substitute its judgment for that of the trial court

absent a clear abuse of discretion.  Dunseth, 260 Ill. App. 3d at

831, 633 N.E.2d at 94.  An abuse of discretion occurs only where

no reasonable person could adopt the trial court's position.  

Dunseth, 260 Ill. App. 3d at 831, 633 N.E.2d at 94.  Further,

this court held in In re Marriage of Benz, 165 Ill. App. 3d 273,

288, 518 N.E.2d 1316, 1324 (1988), that a trial court "need not

make specific findings as to each of the factors set forth in

section 503(d) [of the Act]."

          In this case, the trial court ordered that Crystal be

liable for repaying personal loans from Crystal's immediate

family members (her mother and sister) in the amount of $4,696. 

The court ordered that Richard be liable for marital debts to

five third-party creditors in the amount of $4,375.  The court

also ordered Crystal to pay her portion of the guardian ad litem

fees pursuant to a prior court order, and awarded Crystal a

window air conditioner.  

          Based upon our review of the record, we conclude that

the trial did not clearly abuse its discretion in its property

division and debt allocation.

[The preceding material is not to be published pursuant to

Supreme Court Rule 23.]

                           IV. ISSUES ON REMAND

          Although we have determined that this case must be

remanded for a de novo hearing on the issue of visitation,

Crystal raises other issues that will likely arise on remand.  We

address these issues separately. 

               A. Burden of Proof in a Visitation Proceeding

          Crystal argues that the trial court erred by placing

the burden on her to show that supervised visitation should be

continued as provided by the temporary order.  We disagree.

          Section 607 of the Act governs a parent's visitation

rights.  Section 607(a) of the Act entitles a parent who was not

granted custody of his child to reasonable visitation rights

unless the court finds that visitation would seriously endanger

the child's physical, mental, moral, or emotional health.  750

ILCS 5/607(a) (West 1994).  The custodial parent carries the

burden of proving by a preponderance of the evidence that visita-

tion with the noncustodial parent would seriously endanger the

child.  Heldebrandt v. Heldebrandt, 251 Ill. App. 3d 950, 957,

623 N.E.2d 780, 785 (1993).    

          In the present case, Crystal petitioned for temporary

custody, which the trial court granted.  Prior to the October

1995 final hearing, the parties stipulated that Crystal would

have sole custody of M.F. and A.F.  Thus, the trial court did not

err by placing on Crystal, as the custodial parent, the burden of

proving that visitation with Richard would seriously endanger

their children.

                B. Testimony of McGee as an Expert Witness

          The material in this section is not to be published

pursuant to Supreme Court Rule 23.  

[The following material is not to be published pursuant to

Supreme Court Rule 23.]

          Crystal next argues that the trial court erred by

refusing to allow M.F.'s counselor, Kathryn McGee, to testify as

an expert witness.  Crystal specifically contends that in his

temporary order, the original judge appointed McGee as a court

witness pursuant to section 604(b) of the Act (750 ILCS 5/604(b)

(West 1994)), or, alternatively, that the successor judge erred

by finding that McGee was not qualified as an expert and that

McGee's testimony was not necessary.  We disagree.

                        1.  Court-Appointed Witness

          Section 604(b) of the Act provides as follows:

               "The court may seek the advice of pro-

          fessional personnel, whether or not employed

          by the court on a regular basis.  The advice

          given shall be in writing and made available

          by the court to counsel."  750 ILCS 5/604(b)

          (West 1994).

          In this case, Judge Borbely, the original judge,

entered a temporary order, and wrote the following:

               "[B]oth parties shall seek counseling at

          the Center For Children Services ***, and

          cooperate fully with said counseling and

          shall further make the children available in

          connection with all counseling sessions as

          recommended by the said Center For Children

          Services."

No indication exists in this record that Judge Borbely sought

McGee's advice, ordered McGee to prepare a written report for the

court, or appointed McGee as a court's witness pursuant to

section 604(b) of the Act.  Instead, the record merely indicates

that the trial court ordered the parties and their children to

participate in counseling as a condition of its temporary order. 

Accordingly, the successor trial court did not err by excluding

McGee's opinions or the center's written report under section

604(b) of the Act.   

           2. Qualifications and Necessity of McGee as an Expert

          The general principles governing the admission of

expert testimony are well established.  The proponent of the

testimony bears the burden of establishing the qualifications of

a person to testify as an expert witness on a particular subject. 

Schaffner v. Chicago & North Western Transportation Co., 129 Ill.

2d 1, 36, 541 N.E.2d 643, 658 (1989).  The determination whether

a witness is qualified to give an expert opinion lies within the

trial court's sound discretion, and a reviewing court will not

disturb that determination absent a clear showing of abuse of

discretion.  Decker v. Domino's Pizza, Inc., 268 Ill. App. 3d

521, 528, 644 N.E.2d 515, 520 (1994).  Further, the determination

whether an expert witness' testimony will aid in the understand-

ing of the issues in the case lies within the trial court's

discretion.  Decker, 268 Ill. App. 3d at 528, 644 N.E.2d at 520.

          In the present case, Richard objected to McGee's testi-

fying as an expert, and the trial court stated the following:

               "Well, there's been nothing laid in

          foundation that convinces the court that the

          witness is qualified to give an expert opin-

          ion with regard to the psychological or emo-

          tional state of this particular child.  ***

               ***  I'm not sure expert testimony is

          necessary for the court to make its determi-

          nation."

          Reviewing the record before us, although this court may

have decided differently, we cannot conclude that the trial court

clearly abused its discretion by determining that (1) McGee was

not qualified as an expert, and (2) expert testimony was not

necessary for the court to make its determination.

[The preceding material is not to be published pursuant to

Supreme Court Rule 23.]

                            C. Billing Records

          Crystal next argues that the trial court erred by

excluding billing records of the counseling center.  We agree.

          Supreme Court Rule 236 provides an exception to the

hearsay rule for records of regularly conducted activities of any

business.  145 Ill. 2d R. 236.  A party may establish a founda-

tion for admitting business records through testimony of the

records custodian or of another person familiar with the business

and its mode of operation.  Department of Corrections ex rel.

People v. Adams, 278 Ill. App. 3d 803, 811, 663 N.E.2d 1145, 1151

(1996).   

          In the present case, the trial court refused to admit

the billing records, stating that "[t]o the extent *** they're

prepared by others, they're not admissible under the business

records exception."  Accordingly, the trial court erred by

excluding the center's billing records.

                D. Standard for Entering a Visitation Order

          Crystal next argues that the trial court erroneously

applied the "serious endangerment" standard in deciding that

Richard should not be ordered to participate in counseling.  We

agree.

          Section 607 of the Act governs a parent's visitation

rights.  Section 607(a) of the Act provides that "[a] parent not

granted custody of the child is entitled to reasonable visitation

rights unless the court finds, after a hearing, that visitation

would endanger seriously the child's physical, mental, moral or

emotional health."  750 ILCS 5/607(a) (West 1994).  A restriction

on a noncustodial parent's visitation rights is inappropriate

absent a finding of serious endangerment.  See In re Marriage of

Lee, 246 Ill. App. 3d 628, 645, 615 N.E.2d 1314, 1326 (1993).  

          However, not every condition which a trial court may

place upon a noncustodial parent is a "restriction."  A restric-

tion of visitation is an action which limits, restrains, or

confines visitation within bounds.  Lee, 246 Ill. App. 3d at 645,

615 N.E.2d at 1326.  A termination of visitation is a restric-

tion, as is a prohibition on overnight visitation.  Likewise, a

requirement that visitation be supervised, occur in the home of

the custodial parent, or outside the home of the noncustodial

parent is a restriction.    

          We conclude that requiring a noncustodial parent to

participate in counseling is not a "restriction" on visitation. 

A counseling requirement in no way limits, restrains, or confines

visitation within bounds.  Instead, participation in counseling

is more "in the nature of an accommodation" (emphasis omitted) by

a noncustodial parent to best serve the interests of the child. 

See In re Marriage of Tisckos/Stewart, 161 Ill. App. 3d 302, 311,

514 N.E.2d 523, 529 (1987).  Because counseling is not a restric-

tion, a trial court should apply the "best interest of the child"

standard in determining whether to order a noncustodial parent to

participate in counseling.  In re Marriage of Dobey, 258 Ill.

App. 3d 874, 877, 629 N.E.2d 812, 815 (1994) (trial court has

broad discretion in determining visitation rights of the noncus-

todial parent, with the best interest of the child being the main

concern).

          In its December 1995 order, the trial court explicitly

revealed that it used the "serious endangerment" standard when it

wrote the following:

               "[T]he Court *** hereby finds as fol-

          lows:

               1.  That [Richard] should have reason-

          able visitation with both of the said minor

          children of the parties, without restrictions

          or conditions, and with no requirements of

          counseling, because the evidence presented to

          the Court does not establish that such visi-

          tation would seriously endanger the child's

          physical, mental, moral[,] or emotional

          health ***."

          We hold that the trial court erred by applying the

"serious endangerment" standard in determining that Richard need

not participate in counseling, and on remand, the trial court

should apply the "best interest of the child" standard in making

that determination. 

                               V. CONCLUSION

          For the reasons stated, we affirm all portions of the

judgment except with regard to the visitation order.  We reverse

and remand for a de novo hearing on the issue of visitation

consistent with the views expressed herein.

          Affirmed in part; reversed in part and remanded with

directions. 

          GREEN and KNECHT, JJ., concur.