MICHAEL REDMON, Plaintiff and Counterdefendant-Appellee, v. THELMA R. STONE, Defendant and Counterplaintiff-Appellant (Laurie A. Jones, Plaintiff-Counterdefendant).

Fourth District   No. 4—95—0731

Argued March 19, 1996.—Opinion filed May 23, 1996.—Rehearing denied August 2, 1996.

COOK, P.J., dissenting.

Joseph R. Brown, Jr., of Lucco, Brown & Mudge, of Edwardsville, and Michael Shaheen (argued), for appellant.

Scott D. Bjorseth (argued), of Hoagland, Fitzgerald, Smith & Pranaitis, of Alton, for appellee.

JUSTICE GREEN delivered the opinion of the court:

This appeal is taken by defendant-counterplaintiff Thelma R. Stone from a summary judgment entered in favor of plaintiff-counterdefendant Michael Redmon as to Stone's counterclaim. The evidence at the motion for summary judgment, considered most favorably to Stone (see *Barnes v. Washington*, 56 Ill. 2d 22, 26, 305 N.E.2d 535, 538 (1973)), presents a close question of tort law in regard to duty. Based upon the latest precedent of the Supreme Court of Illinois and what we consider to be the best policy, we hold that Redmon did not breach any duty to Stone, and we affirm the summary judgment.

The factual situation presented was substantially as follows: (1) on September 16, 1990, Laurie A. Jones was driving an automobile on a two-lane highway when her motor stopped; (2) leaving the vehicle on the road, Jones went to Redmon's house for help, and he drove her to a gasoline station where they obtained gasoline; (3) they drove back to where the stalled automobile was located, arriving after dark; (4) the stated vehicle was unlighted; (5) Redmon neither turned on any of the vehicle's lights nor attempted to remove it from the road; (6) rather, Redmon opened the hood of the stalled car and attempted to start the car by manipulation of the carburetor and infusion of gasoline; (7) after Redmon spent 10 or 15 minutes attempting to do so, Stone drove along the road and ran into the rear of the stalled car; (8) Stone was injured in the collision; and (9) Redmon could have pushed the vehicle off the road and turned on the hazard lights prior to the collision.

These proceedings were initiated when Redmon filed a complaint in the circuit court of Macoupin County on June 29, 1991, against Stone seeking compensation for injuries he allegedly received from the collision (case No. 91—L—59). Subsequently, Jones filed a com-

plaint in the same court against Stone seeking compensation for her alleged injuries (case No. 92—L—50). The cases were consolidated and, in each case, the defendant filed a counterclaim against that plaintiff. Redmon moved for a summary judgment as to Stone's counterclaim, maintaining he had not breached any duty to Stone and, if he had, any such conduct was not a proximate cause of her injuries. On July 25, 1995, the circuit court allowed that motion and made a finding pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)), which made that summary judgment appealable. Stone then filed the instant appeal.

A summary judgment should only be granted when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1992); *Purtill v. Hess*, 111 Ill. 2d 229, 240, 489 N.E.2d 867, 871 (1986). Summary judgment is proper when the evidence properly before the court shows that, if the cause of action were to go to trial, there would be no issues for the trier of fact to decide and the proponent would be entitled to judgment as a matter of law. *Barnes*, 56 Ill. 2d at 26-27, 305 N.E.2d at 538; *Fooden v. Board of Governors of State Colleges & Universities*, 48 Ill. 2d 580, 587, 272 N.E.2d 497, 500 (1971).

■ Here, the basis of the summary judgment was the testimony in the depositions of Stone, Jones, Redmon, and Paula Marie Mitchell. The latter was a friend of Stone's who testified she drove past the stalled vehicle shortly before Stone did and, at that time, the vehicle was on the highway and unlighted. The other testimony indicated the existence of a factual question as to the situation of the vehicle. The evidence was undisputed that Redmon did not enter the vehicle but had lifted the hood of that vehicle and was attempting to get it started. The parties acknowledge that under the voluntary-undertaking theory, one who volunteers to assist another can be liable for the negligent performance of the undertaking. *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 74, 199 N.E.2d 769, 773-74 (1964); *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32, 605 N.E.2d 557, 560 (1992). The parties also seem to acknowledge that the duty imposed depends upon the extent of the volunteer's undertaking. *Frye*, 153 Ill. 2d at 26, 605 N.E.2d at 560.

The parties dispute whether the voluntary undertaking of Redmon to help Jones start her car included a duty to protect users of the highway from the danger of the stalled car alleged to be on the highway by taking affirmative steps to alleviate the situation, and whether his failure to do so was a proximate cause of Stone's injuries.

We have little problem with the proximate cause issue, but, as we have indicated, we find the duty question difficult. We consider the duty question first.

■ Many tort cases which arise from action by a volunteer concern injury to the person the volunteer seeks to help and the duty the volunteer owes to that person. Here, the injured party is a third person. In *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 415-16, 583 N.E.2d 538, 544 (1991), the supreme court indicated that in such a case, section 324A of the Restatement (Second) of Torts (Restatement (Second) of Torts § 324A (1965) (hereinafter Restatement)) states an appropriate standard. Section 324A of the Restatement states:

> "Liability to Third Person for Negligent Performance of Undertaking.
> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
> (a) his failure to exercise reasonable care increases the risk of such harm, or
> (b) he has undertaken to perform a duty owed by the other to the third person, or
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking." Restatement § 324A, at 142.

In regard to subsection (a) of section 324A of the Restatement, any failure of Redmon to illuminate Jones' car or remove it from the highway did not increase the risk to Stone, because absent action by Redmon, the vehicle would still have been on the highway and unlighted. A noted authority on torts has stated that in most cases where liability has been imposed, the volunteer had made the situation worse (W. Keeton, Prosser & Keeton on Torts § 56, at 381 (5th ed. 1984) (hereinafter Prosser)). As far as subsection (b) of section 324A of the Restatement is concerned, Jones did owe a duty to Stone to protect her from hitting the vehicle, but the evidence gives no direct indication that Redmon undertook to perform that duty.

The reliance provision of subsection (c) of section 324A of the Restatement offers the strongest argument that Redmon was under a duty to protect Stone from the parked, unlighted vehicle. The comments to subsection (c) of section 324A of the Restatement state:

> "*e. Reliance.* The actor is also subject to liability to a third person where the harm is suffered because of the reliance of the other for whom he undertakes to render the services, or of the third person himself, upon his undertaking. *This is true whether*

*or not the negligence of the actor has created any new risk or increased an existing one.* Where the reliance of the other, or of the third person, has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk." (Emphasis added.) Restatement, Comment *e*, at 144.

Stone was not placing any reliance upon Redmon, but argument can be strongly made that we should treat Jones as relying on Redmon not only to start her car but also to take charge of the entire operation of remedying the situation she was in with her unlighted car on the highway. If Redmon's undertaking was that broad, he could easily have turned on the hazard lights.

In contending that Redmon's undertaking was sufficiently broad to place a duty on him to take safety measures in regard to the car, Stone relies upon *Rhodes v. Illinois Central Gulf R.R. Co.*, 268 Ill. App. 3d 589, 645 N.E.2d 298 (1994), *rev'd*, 172 Ill. 2d 213 (1996), *Decker v. Domino's Pizza, Inc.*, 268 Ill. App. 3d 521, 644 N.E.2d 515 (1994), and *Urbas v. Saintco, Inc.*, 264 Ill. App. 3d 111, 636 N.E.2d 1214 (1994). The latter two cases involved undertakings different from that here, and the decision in the supreme court after granting leave to appeal in the former case is at the heart of our determination to affirm here.

In *Decker*, a franchisor had voluntarily set up a comprehensive safety program to prevent violence by circulating safety kits to all franchisees, adopting a cash-money management system which included a time-delay safe, and employing a consultant to assure each franchise complied with the safety measures. An employee of a franchisee was hurt during a robbery and sued the franchisor on the basis that plaintiff's injuries occurred because of a negligently conceived aspect of the comprehensive system developed by the franchisor. The appellate court upheld a judgment on the verdict on the basis that in providing the comprehensive system, the franchisor voluntarily undertook a duty to present a system that was not negligently developed.

In *Urbas*, the appellate court affirmed a judgment on a jury verdict in favor of the estate of the plaintiff where recovery was based on the voluntary-undertaking theory of liability. There, the deceased was an employee of defendant, the owner of an adult entertainment club. The evidence established defendant voluntarily instituted a courtesy patrol that secured the parking lot for the guests and employees of the club. The deceased died after spending 24 hours, ill in his automobile which was parked in defendant's parking lot, without being discovered. At issue was the extent of the defendant's

undertaking and whether it voluntarily assumed the duty to check the interior of the automobiles parked in its lot. Evidence was presented that the defendant voluntarily assumed the duty to protect its patrons and employees which necessarily included checking the interior of automobiles on its lot.

The *Decker* and *Urbas* decisions were not made by the appellate court of this district and are not binding on us. More significantly, they involved complex schemes which were for the benefit of franchisees, customers, or employees, and the injuries which occurred were to people the scheme was designed to protect and arose from imperfections in the schemes. The schemes did not have the "Good Samaritan" aspect of the instant situation.

In *Rhodes*, the appellate court upheld a judgment on a jury verdict in favor of the estate of the plaintiff and against Illinois Central Gulf Railroad (ICG), finding ICG liable for the death of a man found injured in the railroad waiting room. The evidence established that an ICG conductor observed the deceased lying face down with blood on the floor of the railroad waiting room. The conductor notified the supervisor of the need for assistance. The conductor stopped at the same station approximately one hour later but did not check to see if the deceased was still there. Approximately two hours later, the conductor observed the deceased still lying on the floor, and he again reported it to his supervisor. Again two hours later, the conductor observed the deceased still lying on the floor. Apparently, soon after the deceased was found by the conductor, the ICG supervisor contacted the ICG police, who in turn contacted the Chicago police. Eventually, the Chicago police transported the deceased to the hospital where he later died from a massive subdural hematoma probably caused from hitting his head on the ground.

The appellate court held that, assuming the deceased was a trespasser on ICG property, for public policy reasons ICG still owed a duty of ordinary care once it was discovered the deceased was in danger. Relevant here, that court held that ICG owed a duty to the deceased under the voluntary-undertaking theory of negligence. Once ICG voluntarily assumed the duty to help the deceased, it had an obligation to use reasonable care in assuring that the deceased received timely aid.

The Supreme Court of Illinois granted leave to appeal in *Rhodes* and reversed and remanded for a new trial. *Rhodes v. Illinois Central Gulf R.R.*, 172 Ill. 2d at 213. The stated reason for the reversal was error in instructions. However, in reaching its decision, the court stated:

> "We briefly dispense with the appellate court's conclusion that,

even if the law imposed no duty on ICG to aid Carl [Rhodes], ICG voluntarily undertook that duty and did so negligently by failing to 'follow up' on the Chicago police department's response to its calls.

Pursuant to the voluntary undertaking theory of liability, one who undertakes, gratuitously or for consideration, to render services to another is subject to liability for bodily harm caused to the other by one's failure to exercise due care in the performance of the undertaking. *Frye v. Medicare-Glaser Corp.*, 153 Ill. 2d 26, 32 (1992); *Pippin v. Chicago Housing Authority*, 78 Ill. 2d 204, 209-10 (1979). The duty of care which arises in such a situation is, however, limited to the extent of the undertaking. *Vesey v. Chicago Housing Authority*, 145 Ill. 2d 404, 417 (1991); *Pippin*, 78 Ill. 2d at 210.

ICG here contends, and we agree, that it began no 'voluntary undertaking' in this case which could render it liable for Carl's death. Assuming, as we must for this argument, that ICG owed no duty in the first instance to rescue Carl, we find no voluntary undertaking on the part of ICG which gave rise to this duty. At most, *ICG undertook to report Carl's presence to the Chicago police department and performed that undertaking by placing several calls to that department. We find nothing to indicate that ICG, by that action, voluntarily undertook to do anything more*, such as ensuring that aid would be provided to Carl. See *Rowe v. State Bank*, 125 Ill. 2d 203, 218-19 (1988) (landlord did not voluntarily assume duty to protect tenants from criminal acts of third parties by providing lighting in the common areas and assuring that locks were in working order); *Pippin*, 78 Ill. 2d at 210 (CHA's duty was limited by the extent of its undertaking, to provide guard services, and did not render CHA under a duty to protect social guest from criminal attack).

As a matter of public policy, we do not think it appropriate to hold that a party voluntarily undertakes a legal duty to rescue an injured stranger by simply calling the police. *Such a holding would discourage citizens from taking even this most basic action to obtain assistance for an injured stranger.* We therefore reject the appellate court's voluntary undertaking theory as a basis for ICG's liability in this case." (Emphasis added.) *Rhodes*, 172 Ill. 2d at 239-40.

Prior to *Rhodes*, in *Frye* (153 Ill. 2d at 33, 605 N.E.2d at 560), the supreme court indicated that a "narrow construction" of voluntary undertakings was "supported by public policy." There, a pharmacy had voluntarily placed upon a medicine sold a warning that one taking the prescription might suffer drowsiness. The personal representative of a user of the prescription sued the pharmacy on the basis

that having warned of one danger from use, the pharmacy had undertaken to warn of all dangers and sought recovery for injuries to her decedent arising from another dangerous use of the prescription not labeled. The supreme court upheld a summary judgment for the pharmacy.

Redmon cites *Poelker v. Mason Community Unit School District No. 5*, 212 Ill. App. 3d 312, 571 N.E.2d 479 (1990), where this court held that, as a matter of law, a volunteer who agreed to measure and record the length of discus throws at a school track meet did not assume a duty to supervise the warm-up prior to the competition where one of the performers hit another person with a practice throw.

■■ We recognize that the duty Stone seeks to place on Redmon is closer to Redmon's undertaking to start Jones' car than was the relationship in *Poelker*. We also recognize that the circumstance of Redmon's attempt to aid Jones could have implied a reliance by Jones on Redmon to do what was necessary to safely deal with the stalled car. However, Redmon's undertaking to start Jones' car was not a comprehensive plan such as that in *Decker* and *Urbas*. Unlike in those cases, Redmon's undertaking was not connected with a commercial venture, and he was purely a Good Samaritan. *Rhodes* and *Frye* indicate a strong public policy to narrowly construe duty under the circumstances involved here so as not to deter or discourage the voluntary acts of "Good Samaritans." Such a narrow construction of duty is not likely to encourage carelessness by "Good Samaritans." Stone would not likely have been better off if Redmon had not intervened.

The circuit court properly entered summary judgment to Redmon on the basis that his undertaking did not create a duty in him to remove or illuminate Jones' car.

The circuit court ruled that any nonfeasance by Redmon was not a proximate cause of Stone's injury, because the injuries would have accrued anyway. In *Benner v. Bell*, 236 Ill. App. 3d 761, 765-66, 602 N.E.2d 896, 899 (1992), this court recognized the close relationship between the factors involved in duty and those which concerned proximate cause. We have considered the fact that Redmon's actions did nothing to increase Stone's exposure to injury in making our decision in regard to duty. However, if Redmon had a duty to move the vehicle or see that it had proper lighting to warn oncoming vehicles, his nonfeasance of that duty could clearly have been found to be a proximate cause of the injury. Otherwise, nonfeasance of a duty would seldom be a proximate cause of an injury.

This case differs from *Benner* cited by Redmon. There, an intoxicated driver hit a vehicle in front of him at night. The vehicle

which was hit was properly illuminated, but it was following a horse-drawn buggy which was not. We held that, as a matter of law, the failure to properly light the buggy was not a proximate cause of the collision. While the collision might not have occurred if the buggy had not been slow moving, that movement was permitted by statute (Ill. Rev. Stat. 1989, ch. 95$^1$/$_2$, pars. 11—206, 12—205, 12—709(a)). We determined that the lack of lights on the buggy, which was negligence, did not increase the likelihood of the collision. *Benner*, 236 Ill. App. 3d at 769, 602 N.E.2d at 902.

Recognizing the complexity of the issue involved, we affirm the summary judgment for Redmon on Stone's counterclaim against him.

Affirmed.

GARMAN, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I respectfully dissent and would reverse the trial court's entry of summary judgment for Redmon. I agree with the majority that summary judgment cannot be sustained on the basis that Redmon's conduct was not a proximate cause of Stone's injury. I disagree that Redmon had no duty to Stone.

The areas covered in sections 323 and 324A of the Restatement are discussed in section 56 of Prosser. Liability for nonfeasance was slow to receive recognition in the law. Such liability eventually was extended to anyone who, for a consideration, "has undertaken to perform a promise." From the earliest days, however, it was held that liability for *misfeasance* "may extend to any person to whom harm may reasonably be anticipated as a result of the defendant's conduct, or perhaps even beyond." Prosser § 56, at 373-74; see also *Nelson*, 31 Ill. 2d at 86, 199 N.E.2d at 779; *Vesey*, 145 Ill. 2d at 418, 583 N.E.2d at 545. It is not always easy to draw the line between misfeasance and nonfeasance. Failure to blow a whistle is inaction but is readily treated as negligent operation of a train, which is affirmative misconduct. Prosser § 56, at 374-75. "Where performance clearly has begun, there is no doubt that there is a duty of care." Prosser § 56, at 380.

In the present case, we need not consider whether section 324A of the Restatement has been satisfied because we are dealing with misfeasance, not nonfeasance. This is not a case where Redmon refused to help with the stalled vehicle or promised to help but did not or started to help and then quit. Redmon actually entered into performance—he was under the hood. Having entered into perfor-

mance, Redmon had the same duty of care as anyone else working on a stalled vehicle. Again, "[i]t is axiomatic that every person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his *act*." (Emphasis added.) *Nelson*, 31 Ill. 2d at 86, 199 N.E.2d at 779; see also *Vesey*, 145 Ill. 2d at 418, 583 N.E.2d at 545. Perhaps in the particular circumstances here Redmon acted reasonably, but that is not a question we may resolve by holding there is no duty. The jury was entitled to decide whether a reasonable person would have attempted to start a stalled vehicle in the dark without activating its flasher lights or attempting to remove it from the roadway.

Even assuming Redmon's conduct constituted nonfeasance, he still was subject to a duty under section 324A of the Restatement, which provides for liability on the part of those who undertake, gratuitously or for consideration, to render services. A large body of case law has been built up that a mere gratuitous promise to render service or assistance, with nothing more, imposes no tort obligation upon the promisor, even though the plaintiff may rely on the promise and suffer damage because of that reliance. Due to its apparent harshness, this old rule has served chiefly as a point of departure, and very little extra is required for the assumption of the duty. Prosser § 56, at 379. Initiation of the "undertaking" is commonly found in minor acts, of no significance in themselves and without any effect of their own upon the plaintiff's interests. Prosser § 56, at 379; Restatement § 323, Comment *d*, § 324A, Comment *f*.

Looking first at section 324A(a) of the Restatement, the majority states that any failure of Redmon to illuminate Jones' car or remove it from the highway did not increase the risk to Stone (citing Prosser § 56, at 381). Prosser, however, mentions some ways in which defendant has made the situation worse, "either by increasing the danger, by misleading the plaintiff into the belief that it has been removed, *or by depriving him of the possibility of help from other sources.*" (Emphasis added.) Prosser § 56, at 381. (Prosser also mentions there are a number of cases in which any requirement that defendant has made the situation worse has been rejected. Prosser § 56, at 381-82.) The majority mistakenly considers only Redmon's failure to illuminate the car or remove it from the highway. It seems clear that by agreeing to repair the stalled vehicle Redmon deprived Jones (and thereby Stone) "of the possibility of help from other sources." If Redmon had not agreed to help Jones, Jones would have gotten someone else to do so, and we must assume that "someone else" would have acted reasonably.

There is more involved in most projects than simply carrying out the assigned task. If I hire someone to paint my house (or if my brother volunteers to do so), he is expected to be careful not to drop a bucket on my neighbor's head. It is not necessary that I or my neighbor contract with the painter to be careful. When the painter takes on the project, he takes on all that it involves, including roping off areas where things might be dropped, if a reasonable painter would rope off areas.

Section 324A(b) of the Restatement provides for liability where the promisor Redmon has "undertaken to perform a duty owed by the other [Jones] to the third person [Stone]." Restatement § 324A(b), at 142. Looking at that subsection, the majority recognizes that Jones owed a duty to Stone and other users of the highway to guard against vehicles hitting the stalled vehicle, but concludes that "the evidence gives no direct indication that Redmon undertook to perform that duty." 281 Ill. App. 3d at 520. Again, the courts have tended to seize upon almost any act of the promisor as an undertaking of responsibility. Restatement § 324A, Comment *f*. Perhaps if Redmon and Jones had made it clear between themselves that Jones would arrange for the safety of the vehicle, and that Redmon assumed no responsibility in that regard, Redmon would have no liability. We should leave it to the jury to determine if there is any such evidence. In the absence of any evidence, Redmon should not be viewed as having agreed to do only part of the job of starting the stalled vehicle, the part not related to safety.

Section 324A(c) of the Restatement provides for liability where there is reliance upon the promisor, either by the one for whom the services are rendered or by the third party. Liability is expressly stated to exist in that situation even if the negligence of the promisor has not created any new risk or increased an existing one. Inducing another to forego other remedies or precautions is equated with the creation of the risk. The majority seems to recognize that section 324A(c) applies here, but chooses instead a "narrow construction" based on the supreme court's decisions in *Rhodes* and *Frye*. *Rhodes* held that where a railroad, which had no duty in the first place, voluntarily phoned the police regarding an unconscious person, the railroad had no duty to follow up on that call. If all Redmon had done in this case was phone the police, I would agree he had no duty, but he did more than that. There may be no duty to take care of a man who is ill or intoxicated, but "if the defendant does attempt to aid him, and takes charge and control of the situation, he is regarded as entering voluntarily into a relation which is attended with responsibility." Prosser § 56, at 378. *Frye* clearly involved a limited undertaking.

The majority explains its decision on the basis that it is necessary to protect "Good Samaritans." *Rhodes* was much more limited: "[W]e do not think it appropriate to hold that a party voluntarily undertakes a legal duty to rescue an injured stranger by simply calling the police." *Rhodes*, 172 Ill. 2d at 240. To some extent public policy favors requiring even "Good Samaritans" to act reasonably. "It is quite possible that this obligation of reasonable care under all the circumstances provides all the limitation that is really necessary. The defendant is never required to do more than is reasonable." Prosser § 56, at 382. Who is a "Good Samaritan" who should be excused from any duty of due care? A mechanic who opens his shop at night to help (for a fee) a stranded traveler? A mechanic who charges no fee, during regular hours, for minor repairs? Defining "Good Samaritans" and relieving them of their duty to act reasonably is best left to the legislature. See 225 ILCS 60/30 (West 1994) (physicians who in good faith and without prior notice provide emergency care without fee liable only for wilful or wanton misconduct); 225 ILCS 25/53 (West 1994) (dentist who in good faith provides emergency care without fee at the scene of an accident liable only for wilful and wanton misconduct); 745 ILCS 20/1 (West 1994) (law enforcement officer who provides emergency care without fee liable only for wilful and wanton misconduct).

I question whether Redmon should be given any special treatment as a "Good Samaritan" under the facts of this case. This was not a case where Redmon came upon an accident scene and something had to be done immediately. Redmon or Jones could have called a tow truck from Redmon's home, which apparently could have driven to the scene in the same time it took Redmon to drive there. The record does not indicate what relationship exists between Redmon and Jones, but if Jones called her brother or her father for help instead of incurring the expense of a tow truck, why should her brother or father have any less duty to the public than a tow truck operator?

There is some indication in the majority opinion that Redmon may have had some duty to Jones, the person with whom he dealt, but not to Stone, whom he had never met. I disagree. The quotation from *Nelson* that persons generally have a duty regarding their "acts," continues, "and *** such duty does not depend upon contract, privity of interest or the proximity of relationship, but extends to remote and unknown persons." *Nelson*, 31 Ill. 2d at 86, 199 N.E.2d at 779. When Redmon began to work on this unlighted vehicle in the middle of the roadway at night he had to concern himself with members of the public using the roads even though he had not contracted with them to use reasonable care.

Liability for nonfeasance is an area of the law which is expanding, not contracting. The majority decision runs counter to that trend and goes far beyond the carefully limited holdings of *Rhodes* and *Frye*. I dissent.