NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued August 6, 2008
Decided August 27, 2008

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

No. 08-1495

| | |
|---|---|
| ATLANTIC MUTUAL INSURANCE COMPANY, as subrogee of TENSOR GROUP, INC., | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division |
| *Plaintiff-Appellant*, | |
| *v.* | No. 06 C 6300 |
| JARDIS INDUSTRIES, INC., | Ronald A. Guzmán, |
| *Defendant-Appellee*. | *Judge.* |

**ORDER**

Atlantic Mutual Insurance Company, as subrogee of Tensor Group, is seeking to recover for damages that employees of Jardis Industries, Inc., caused to a newly purchased machine when they negligently loaded another machine into the truck that was carrying Tensor's machine. The district court dismissed Atlantic's claim against Jardis for failure to state a claim, see FED. R. CIV. P. 12(b)(6), on the theory that Jardis had no duty to put the second machine into the truck and thus it could not be liable to Tensor. On appeal, Atlantic

stresses the fact that its case did not rest on any supposed contractual duty. Instead, Atlantic's theory is that once Jardis voluntarily undertook to load the truck, it assumed a noncontractual duty to act with ordinary care. We agree with Atlantic that the district court read the complaint too narrowly, and we therefore vacate the district court's judgment and remand for further proceedings.

Tensor manufactures equipment used by newspapers and commercial printers. In early 2002, it purchased a printing press from Jardis, which has facilities in Itasca and Woodridge, Illinois. Tensor hired Solace Transfer Co., a commercial carrier, to transport its machine from Jardis's plant to Tensor's client (Press Enterprise, Inc.) in Bloomsburg, Pennsylvania. The contract for carriage specified that it was to be "F.O.B. Itasca, Il." Solace picked up the press in Woodridge, Illinois, but the truck then proceeded to Itasca, where a second printing press that Tensor had purchased from Jardis was waiting for pickup and was to be delivered in Pennsylvania along with the first one. Jardis employees loaded the second press onto the truck behind the first one, and the truck drove on to Pennsylvania.

Upon arrival in Pennsylvania, Tensor discovered that the first press had been damaged in transit from shifting or movement of the second machine. It turns out that, in order to load this type of machine properly, it is necessary not only to place it into the truck, but also to secure the box by nailing the wooden pallet on which the machine was packed to the floor of the trailer. The first press had been secured in this way, but the press that Jardis had loaded in Itasca had not – hence the banging around and damage to the first press. Tensor promptly reported the damage and submitted a claim to Atlantic, its insurer. The customer, Press Enterprise, refused to accept the damaged press, and thus a replacement valued at $54,324.44 had to be ordered. In addition, there was damage to the truck requiring the eventual replacement of three panels. Atlantic paid Tensor $23,793 in settlement of its insurance claim, in exchange for subrogation rights.

Atlantic then sued both Solace and Jardis, raising a claim under the Carmack Amendment, 49 U.S.C. § 14706, against Solace, and common-law negligence claims against both Solace and Jardis under the court's supplemental jurisdiction, 28 U.S.C. § 1367. The district court entered a default judgment against Solace, which had failed to appear, and it then turned to Jardis's motion to dismiss under Rule 12(b)(6). In granting that motion, the district court reasoned that Atlantic had failed to state claim against Jardis because, under the Illinois Uniform Commercial Code, 810 ILCS § 5/2-319(1)(a), an F.O.B. "point of shipment" contract does not obligate the shipper to load the goods. This contract was "F.O.B. Itasca," and so Jardis had no duty to load the second press. From that, it jumped to the conclusion that Atlantic could not recover for negligence even if Jardis's employees had caused the damage to the first press.

It was at that last step in the analysis that the district court went astray. Atlantic's complaint set forth the critical events of the underlying occurrence on which its case rested: Jardis's loading of the machine into the truck on a particular date, for a particular shipment, and the resulting damage to the other cargo on the truck (the first machine). The plaintiff has no obligation, in the complaint, to set forth the various legal theories under which it hopes to recover. See, *e.g., McDonald v. Household Intern., Inc.,* 425 F.3d 424, 427 (7th Cir. 2005) ("This court has repeatedly held that pleaders in a notice system do not have any obligation to plead legal theories.") (citing cases). Nothing in *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955 (2007), changes that. See, *e.g., Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Servs., Inc.,* No. 07-1567, 2008 WL 2941171, at *2 (7th Cir. Aug. 1, 2008).

Here, although the district court was correct about the fact that Jardis had no duty to load the machine under the terms of an "F.O.B. place of shipment" contract, that does not exhaust the legal theories available to Atlantic. As Atlantic has argued, there is another theory under which it would be entitled to recover, assuming that it could prove the necessary facts. Illinois courts follow the "Good Samaritan" rules outlined in the Restatement (Second) of Torts, § 324A, which provides as follows:

Liability to Third Person for Negligent Performance of Undertaking.

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if

    (a) his failure to exercise reasonable care increases the risk of such harm, or
    (b) he has undertaken to perform a duty owed by the other to the third person, or
    (c) the harm is suffered because of reliance of the other or the third person upon the undertaking."

See *Redmon v. Stone,* 667 N.E.2d 526, 528 (Ill. App. Ct. 1996); *Triolo v. Frisella,* 121 N.E.2d 49, 52 (Ill. App. Ct. 1954). See also *Gaines v. Ill. Cent. R.R. Co.,* 23 F.3d 1170, 1172 (7th Cir. 1994); *Cincinnati Ins. Co. v. City of Taylorville,* 818 F.2d 1345, 1348 (7th Cir. 1987).

Here, according to Atlantic's allegations (which we accept for this purpose only), Jardis gratuitously undertook to load the second printing press into Solace's truck. Jardis should have recognized that the press had to be secured so that it would not damage the other

contents of the trailer. Even though Jardis had no contractual duty to load the press, once it decided to do so, it was required to exercise reasonable care.

Because Atlantic's complaint, so understood, stated a claim upon which relief can be granted, we VACATE the district court's judgment and REMAND for further proceedings consistent with this order.